**STEVENSON et al. v. CABELL'S, Inc.**

No. 14825.

Court of Civil Appeals of Texas.

Dallas.

April 30, 1954.

John Ben Shepperd, Atty. Gen., and Clyde B. Kennelly, Asst. Atty. Gen., for appellants.

Horace B. Houston, Jr., Dallas, for appellee.

YOUNG, Justice.

This proceeding for injunction was in consequence of Appellant Board's conclusion that a Cabell product, variously labeled as "Frozen Egg Nog," "Frozen Egg Nog Ice Cream," and "Rum Ice Cream," was being prepared and vended in violation of State Liquor Laws; in particular, of Art. 666–3a(1), Vernon's Ann. P.C. that "'Alcoholic Beverage' shall mean alcohol and any beverage containing more than one-half of one per cent ($\frac{1}{2}$ of 1%) of alcohol by volume which is capable of use for beverage purposes, either alone or when diluted"; Art. 667–2: "It shall be unlawful to manufacture, sell, barter, or exchange within this State any beverage containing alcohol in excess of one-half of one per cent by volume and not more than four (4) per cent of alcohol by weight except beer"; and 666–15(11) (Pertaining to an Industrial Permit and the flavoring of food products): "It shall be unlawful for any person to sell, possess, or divert any of the products enumerated in paragraphs (1), (2), (3), and (4), for beverage purposes, or to sell or divert any of the same under circumstances from which he might reasonably deduce the intention of the purchaser to be to use them for such purpose."

A temporary restraining order issued against Appellant Administrator ex parte; and on hearing of application for temporary injunction, the trial court declined to resolve the issue of whether the product in question was a beverage or capable of use as a beverage, alone or when diluted; concluding, in effect, that a maintenance of the status quo between the parties required a continuance of restraint until trial of cause on its merits.

Appellee, by sworn petition alleged, with testimony in support, that for years prior to about December 10, 1953, it had been engaged in the manufacture and sale of dairy food products, including ice creams, differently flavored, one of which had a rum flavor, appropriately branding and advertising the same as "Egg Nog Ice Cream"; that genuine rum is used therein

as a flavor, necessarily containing more than one-half of one per cent of alcohol by volume; but that said product, in composition, form and remaining ingredients, is exactly the same as its other types of ice cream, all sold in frozen or solid form, in uniform quart size cartons or containers; that in such connection it was issued a permit (industrial alcohol); contending that the particular rum flavored ice cream is in no sense a beverage or reasonably susceptible for use as such.

In November 1949, upon inquiry from appellee concerning legality of the product in question, the answer of Coke Stevenson, Jr., Board Chairman, stated in part: "This is to inform you that in my opinion the product which you discussed with me will conform to the law as a food instead of a beverage. Therefore, this is your authority to continue to manufacture frozen eggnog. We consider the mixture a food so long as it is frozen. If sold as a liquid it would be a beverage." On reference of the same subject to the office of State Attorney General by Mr. Stevenson, the response of that Department of date December 6, 1952, in summary, was that "Egg nog is a 'beverage' within the terms of the Texas Liquor Control Act and it cannot be manufactured or sold without a permit if it contains more than ½ of 1% of alcohol by volume. 'Ice Cream' is not a 'beverage' within the terms of the Liquor Control Act and may be manufactured or sold when it contains more than ½ of 1% of alcohol by volume without any permit other than an industrial permit provided there is no subterfuge involved."

Prior to the last ruling above, appellee's product, on lid of carton, had carried the words "Frozen Egg Nog—Cabell's—A genuine frozen egg nog, no synthetic or imitation flavors used * * *"; but following this opinion of the Attorney General, appellee had caused the word "Ice Cream" to be stamped over the latter part of said legend. Upon development of the present controversy (December, 1953), appellee has furnished stickers to all Cabell's Stores, obliterating the original descrip-

tion of its said product except for the label "Cabell's Rum Ice Cream."

Obviously there are unsettled questions of law and of fact implicit in the foregoing statement of the case as developed by the parties; and Judge Thornton was well within his discretion in withholding a decision thereon until final trial to court or jury. "Only where the record shows a clear and positive abuse of discretion by the trial court in passing on settled questions of law as applied to undisputed facts, will the Appellate Court disturb the trial court's exercise of his discretion in passing upon a question of whether justice to all parties will be best served by granting temporary relief against changing the last settled status of the parties." General Drivers, etc., v. Dallas County Const. Employers' Ass'n, Tex.Civ.App., 246 S.W.2d 677, 680. Upon request of appellant, the court has filed findings of fact and conclusions of law, as to which no formal objections or exceptions have been noted. In consequence, this Court is bound thereby. Evans v. Rush, Tex.Civ.App., 254 S.W.2d 799. Likewise, the aforesaid ruling is quite in harmony with the principle just above quoted. We therefore adopt such findings and conclusions as a proper disposition of this interlocutory appeal:

"Facts. (1) Plaintiff has for many years prior to the filing of this suit been engaged in the manufacture, processing and sale of dairy products and other articles of merchandise, including ice cream of various flavors such as vanilla, chocolate and others. (2) Among other ice creams manufactured and sold by plaintiff is one flavored with rum having an alcoholic content of more than ½ of 1 per cent by volume and less than 4 per cent by weight. (3) The ice cream flavored with rum is identical in ingredients and process of manufacture with the other ice creams manufactured and sold by plaintiff with the exception that rum is used as a flavoring instead of some other flavoring and some coloring matter is added to give the prod-

uct more of a yellow color than the other ice creams. (4) Plaintiff has manufactured and sold rum flavored ice cream mainly during the holiday season commencing about the last week in November to the middle of January and during such season has marketed it under the label of frozen egg nog and as egg nog ice cream but at the time of the filing of this suit and at the time of the hearing had dropped the use of the term egg nog and was calling and labeling its product as rum ice cream. (5) Prior to the filing of this suit plaintiff had been led to believe by defendants, as a result of conferences, correspondence and opinions, that its rum flavored ice cream was not regarded as an alcoholic beverage and that so long as it was not labeled as egg nog the defendants would consider that its manufacture and sale was not unlawful. (6) On or about December 10, 1953, defendants, without instituting any criminal complaint or filing any suit for injunction to restrain the manufacture and sale of plaintiff's product and without any other prior notice, advised plaintiff by telephone that his rum flavored ice cream was an alcoholic beverage and that the defendant Cecil Hodges had instructions to seize the same and prevent the sale thereof and that plaintiff was to consider the same from that moment as under technical seizure. (7) The process of freezing is in this instance only a step or part in the manufacture of ice cream and not a subterfuge on the part of plaintiff to disguise a beverage by giving it a solid form. (8) The evidence seems to preponderate against a finding that plaintiff's rum flavored ice cream is a beverage or capable of use as a beverage alone or when diluted, and the Court so finds for the purpose of this hearing, leaving final determination open for trial on the merits: (9) The seizure of plaintiff's rum flavored ice cream at this time would cause to the plaintiff irreparable injury in a substantial sum of which plaintiff would have no adequate remedy at law. Conclusions: The court concludes that the purpose of plaintiff's suit is to determine the legality of the manufacture and sale of its rum flavored ice cream, that defendants have not independently initiated any proceeding that would afford a test, but have by answer to the merits now filed in this cause raised the question and joined issue with the plaintiff and that a judgment is now sought by both parties in a trial on the merits of this question. The Court further concludes and holds in the exercise of its discretion that a grave wrong would be done the plaintiff if the defendants were permitted to disturb the status quo by seizure of plaintiff's rum flavored ice cream and that under the circumstances in evidence in this case, and in view of the foregoing findings of fact, the status quo should be preserved pending a trial on the merits and that therefore plaintiff is entitled to a temporary injunction."

The cause is accordingly affirmed.